IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MUSTAFA-EL K.A. AJALA,
formerly known as Dennis E. Jones-El,

                    OPINION AND ORDER

           Plaintiff,

                    13-cv-545-bbc

      v.

KELLI WEST, RICK RAEMISH,
TODD OVERBO, PETER HUIBREGTSE,
TIM HAINES, GARY BOUGHTON,
CHARLES COLE, AMY SMITH,
GARY HAMBLIN, STEVE CASPERSON
and CATHY JESS,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this civil rights case, pro se plaintiff Mustafa-El K.A. Ajala is challenging two policies that restrict his ability to practice Islam at the Wisconsin Secure Program Facility: (1) a ban on prisoners in segregation from participating in group worship; and (2) a rule that religious services at the prison must be led by a nonprisoner volunteer.  In particular, plaintiff says that the policies are prohibiting him from participating in Jumuah (a weekly Muslim group service) and Taleem (Muslim group study).  Defendants have moved for summary judgment on all of plaintiff's claims and the motion is ready for review. Dkt. #12.

      In his complaint, plaintiff asserted theories under the free exercise clause, the establishment clause, the equal protection clause and the Religious Land Use and

Institutionalized Persons Act, but in response to defendants' summary judgment motion, plaintiff has withdrawn his theories under the Constitution, relying solely on RLUIPA. (At one point in his brief, plaintiff says that defendants' conduct "violates . . . equal protection and the establishment clause," dkt. #25 at 4, but at the beginning of his brief, plaintiff states clearly that he "has chosen to forego each of his claims except those under RLUIPA," id. at 2, so I do not understand plaintiff's reference to the Constitution as an attempt to continue with his constitutional claims.  In any event, plaintiff did not develop an argument under the free exercise clause, the equal protection clause or the establishment clause, so he has forfeited those claims to the extent that he did not withdraw them.)  Because plaintiff has abandoned his constitutional claims, this opinion will be limited to plaintiff's claim under RLUIPA, which, as plaintiff acknowledges, provides injunctive and declaratory relief, but no money damages.  Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011).  Further, because money damages are not at issue, defendants' arguments regarding qualified immunity are moot.  Volkman v. Ryker, 736 F.3d 1084, 1091 (7th Cir. 2013) (qualified immunity does not apply to claims for equitable relief).

Having reviewed the parties' summary judgment submissions, I have reached three tentative conclusions:  (1) plaintiff is entitled to judgment on his claim that defendants are violating RLUIPA by imposing a blanket ban on all prisoners in segregation from participating in group worship; (2) plaintiff's relief in this case should be limited to a declaration and injunction that defendants must consider the individual circumstances of prisoners in segregation such as plaintiff who request to participate in group worship; and

(3) plaintiff's challenge to the ban on prisoner-led religious services should be dismissed as unripe. However, because plaintiff did not file his own motion for summary judgment and the parties did not address the issue of ripeness, I am giving the parties an opportunity to file supplemental materials before I enter judgment.

OPINION

DAI Policy #309.61.01 governs "religious beliefs and practices" at prisons within the Wisconsin Department of Corrections.  Relevant to this case, the policy restricts religious exercise in two ways.  First, it states that "[i]nmates in a segregated status have an opportunity to practice their religious faith, but have restrictions based upon the nature of that status, as well as the security and resource needs of the facility."  The policy goes on to list a number of religious activities that may occur in segregation, but group worship is not among them.  DAI Policy #309.61.01, II.E.2, dkt. #16-1.  Second, the policy states, "[u]nder no circumstances will inmates be authorized to lead or conduct a Religious Service or Study Group." Id. at II.C.3.  The question in this case is whether these two aspects of the policy violate the Religious Land Use and Institutionalized Persons Act.

RLUIPA prohibits prisons receiving federal funds from imposing a "substantial burden" on a prisoner's "religious exercise" unless prison officials can demonstrate that the burden is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).  For the purpose of summary judgment, the parties do not dispute that the Wisconsin Secure Program Facility receives federal funding, that Jumuah

and Taleem are sincere, religious exercises for plaintiff and that the policies at issue further a compelling interest in security. Instead, the parties focus on the questions whether the policies impose a substantial burden on plaintiff's religious exercise and whether the policies are the least restrictive means of furthering the compelling interest. In addition, defendants argue that West, Overbo, Haines, Cole and Hamblin are not personally involved in denying plaintiff an opportunity to participate in group worship. Plaintiff has the burden to show a substantial burden and each defendant's personal involvement; defendants have the burden to show that they have employed the least restrictive means to further their interest. Koger v. Bryan, 523 F.3d 789, 796 (7th Cir. 2008); Beard v. Mitchell, 604 F.2d 485, 498 (7th Cir. 1979).


A.  Ban on Group Worship for Prisoners in Segregation

1. Ripeness

A threshold question not raised by the parties is whether plaintiff's challenge to the ban on group worship for prisoners in segregation is ripe for review. I raise this question because it is undisputed that the Wisconsin Secure Program Facility is not holding Jumuah and Taleem services at the moment because a nonprisoner volunteer is not available to lead the services, Dfts.' PFOF ¶ 97, dkt. #32, suggesting that plaintiff's challenge to the rule regarding prisoners in segregation may not have any immediate legal effect unless plaintiff first successfully challenges the ban on prisoner-led services. However, I conclude that plaintiff's challenge to the segregation rule is ripe regardless of the resolution of plaintiff's

4

other claim because defendants represent that prison staff are actively looking for new volunteers, id. at ¶¶ 98-104, which means that Muslim group worship could resume at any time.

2. Personal involvement

The general rule in cases brought under 42 U.S.C. § 1983 is that a defendant may not be held liable unless he was "personally involved" in the alleged violation of the plaintiff's rights, which means that the defendant caused the violation in some way. Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012). Courts have applied the same rule in cases brought under RLUIPA. Pilgrim v. Artus, No. 9:07-CV-1001 GLSRFT, 2010 WL 3724883, at *14 (N.D.N.Y. Mar. 18, 2010) (citing cases).

When a plaintiff is not seeking damages, but only injunctive relief, "it is irrelevant whether the [defendant] participated in the alleged violations." Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011). However, that does not mean that plaintiff can seek an injunction from anyone he wishes. "[A] claim for injunctive relief can stand only against someone who has the authority to grant it." Williams v. Doyle, 494 F. Supp. 2d 1019, 1024 (W.D. Wis. 2007). In other words, plaintiff must identify some relief that a particular defendant can give him to justify his or her inclusion in the lawsuit.

Defendants argue that West (an administrative policy advisor), Overbo (a former chaplain at the prison), Haines (a former warden at the prison), Hamblin (a former Secretary of the Wisconsin Department of Corrections) and  Cole (a former "designee" for Hamblin)

have no authority to grant any injunctive relief to plaintiff.  In response, plaintiff does not cite any evidence that the listed defendants have any responsibility now for implementing or enforcing the ban on group worship for prisoners in segregation (or the ban on prisoner-led services).  Accordingly, I am dismissing those defendants from the case.

Defendants Raemisch, Huibregtse, Casperson and Smith seem to be in a similar position.  They are no longer employed by the Department of Corrections, Dfts.' PFOF ¶¶ 3 and 9, dkt. #32, so it seems highly unlikely that any of them would have the authority to change the policy at issue.  (The remaining two defendants, Gary Boughton and Cathy Jess, are the warden of the Wisconsin Secure Program Facility and the Division of Adult Institutions Administrator.)  Defendants did not seek dismissal of Raemisch, Huibregtse, Casperson and Smith on personal involvement grounds, presumably because they were relevant to plaintiff's damages claims under 42 U.S.C. § 1983.  Now that plaintiff has withdrawn his request for money damages, I am ordering him  to show cause why defendants Raemisch, Huibregtse, Casperson and Smith should not be dismissed from the case.

3.  Substantial burden

Defendants argue first that plaintiff cannot show that the ban on group worship imposes a substantial burden on his religious exercise because he has other means of practicing his faith in his cell, such as watching videos, reading and praying.  This argument represents a misunderstanding of the scope of the statute.  The question under RLUIPA is not whether the defendants have imposed a substantial burden on *all* of a prisoner's religious

exercises, but whether they have imposed a substantial burden on "*any* religious exercise," 42 U.S.C. § 2000cc-5(7)(A) (emphasis added), a standard the Court of Appeals for the Seventh Circuit has called "undeniably very broad." Korte v. Sebelius, 735 F.3d 654, 673-74 (7th Cir. 2013). In fact, nearly a decade ago, I rejected an argument made by a Wisconsin prison chaplain that a restriction on attending group services is not a substantial burden if the prisoner retained the ability to worship in other ways: "Unlike the First Amendment, RLUIPA protects more than the right to practice one's faith; it protects the right to engage in specific, meaningful acts of religious expression in the absence of a compelling reason to limit the expression." Meyer v. Teslik, 411 F. Supp. 2d 983, 989 (W.D. Wis. 2006). In addition, I rejected the argument that missing three group services was a "de minimis" burden, stating that "[i]t is difficult to imagine a burden more substantial than banning an individual from engaging in a specific religious practice." Id.

The burden in this case is more severe than it was in Meyer because it is undisputed that plaintiff is in segregation and that all prisoners in segregation are prohibited from attending Jumuah and Taleem under any circumstances. Accordingly, I have no difficulty in concluding that plaintiff has satisfied the "substantial burden" element of his RLUIPA claim for the purpose of defendants' motion for summary judgment. Greene v. Solano County, 513 F.3d 982, 988 (9th Cir. 2008) (ban on group worship is substantial burden on prisoner whose beliefs include group worship); Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (same); Murphy v. Missouri Dept. of Corrections, 37 F.3d 979, 988 (8th Cir. 2004) (same); Rowe v. Davis, 373 F. Supp. 2d 822, 827-28 (N.D. Ind. 2005) (same). Defendants

cite no authority supporting a contrary conclusion.

4.  Least restrictive means

In attempting to justify the ban on group worship for prisoners in segregation, defendants argue that the ban furthers a compelling interest in  safety and security because "segregation units house some very dangerous offenders."  Dfts.' PFOF ¶ 23, dkt. #32.  See also Dfts.' Br., dkt. #13, at 9-10.  Of course, safety and security are among the most important government interests in the prison context.  Further, even under RLUIPA, courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  Cutter v. Wilkinson, 544 U.S. 709, 722-23 (2005).

The problem with defendants' argument is that it lumps all prisoners in segregation into one category without considering their individual circumstances.  Even under the more deferential standard for a prisoner's claim under the free exercise clause, courts have held that prohibiting all prisoners in segregation from participating in group services may not be valid.  E.g., Salahuddin v. Goord, 467 F.3d 263, 276-78 (2d Cir. 2006) (in free exercise claim brought by prisoner in segregation who was barred from attending group worship, reversing grant of summary judgment to defendants because record did not show whether officials were justified in banning plaintiff's attendance); Young v. Coughlin, 866 F.2d 567, 570 (2d Cir. 1989) (same).  See also 2 Michael B. Mushlin, Rights of Prisoners § 7:72 (4th

ed. 2009)("[T]he better reasoned decisions [under the free exercise clause] hold that a universal denial of attendance at religious services to all inmates in punitive segregation, without any individual consideration of the security dangers of each inmate, is unconstitutional.").  A blanket rule is even more at odds with RLUIPA, which requires the defendants to "demonstrate[] that imposition of the burden *on that person* . . . is the least restrictive means of furthering [a] compelling governmental interest."  42 U.S.C. § 2000cc-1(a) (emphasis added).

The Supreme Court made this point in the context of interpreting the Religious Freedom Restoration Act, a statute applying to the federal government that uses similar language.  Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) (citing 42 U.S.C.A. § 2000bb-1(b) (government must "demonstrate[] that application of the burden to the person . . . is the least restrictive means of furthering [a] compelling governmental interest")).  The Court held that the government may not adopt a "categorical approach" when restricting religious exercise.  Id. at 430-31.  Instead, courts must "look[] beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants."  Id. at 431.

Following the approach in Gonzalez, courts applying RLUIPA in the prison context have concluded that officials must consider the individual circumstances of the prisoner requesting a religious accommodation.  Haight v. Thompson, 763 F.3d 554, 562 (6th Cir. 2014) ("Rejecting accommodation requests on the ground that an exception to a general

9

prison policy will make life difficult for prison wardens is a fine idea in the abstract . . . but it has no place as a stand-alone justification under RLUIPA."); <u>Yellowbear v. Lampert</u>, 741 F.3d 48, 57 (10th Cir. 2014) (RLUIPA requires that government "prove the 'compellingness' of its interest in the context of 'the burden on that person'—suggesting an inquiry that proceeds in light of the particular burden the government has placed on the particular claimant."); <u>Spratt v. Rhode Island Dept. of Corrections</u>, 482 F.3d 33, 39, 40 n. 9, 41 (1st Cir. 2007) (rejecting prison officials' "all or nothing" argument and finding that officials "must . . . establish that prison security is furthered by barring [the plaintiff] from engaging in" the disputed conduct); <u>Beebe v. Birkett</u>, 749 F. Supp. 2d 580, 588 (E.D. Mich. 2010) ("The defendants have the burden of demonstrating that the policy directive is the least restrictive means to achieve security as applied to [the plaintiff].").

Even more relevant to this case, several courts have rejected arguments that prison officials may ban all prisoners in a particular status from participating in group worship, at least without a showing that  the defendants considered less restrictive alternatives.  <u>Greene</u>, 513 F.3d at 989-90 (denying summary judgment to defendants on RLUIPA claim challenging total ban on group worship by maximum security prisoners); <u>Shepherd v. Powers</u>, No. 11-CV-6860-LTS-RLE, 2014 WL 4826280, at *8 (S.D.N.Y. Sept. 26, 2014) (denying summary judgment to defendants on RLUIPA claim that defendants refused to allow prisoner in segregation to attend group worship; defendants failed to show why plaintiff was not entitled to exception); <u>Penwell v. Holtgeerts</u>, No. C05-2106-TSZ-MAT, 2013 WL 3553417 (W.D. Wash. July 11, 2013) (denying summary judgment to defendants

on RLUIPA claim challenging policy of prohibiting all prisoners in administrative segregation from attending group worship services on ground that "a categorical restriction on prisoners' ability to attend group worship might violate RLUIPA"); Young v. Ericksen, 758 F. Supp. 2d 777, 784-85 (E.D. Wis. 2010) (denying summary judgment to defendants on RLUIPA claim that officials refused to allow prisoner in protective custody to attend group worship services; defendants made no showing that ban was necessary with respect to plaintiff in particular). See also Rowe, 373 F. Supp. 2d at 827-28 (allowing prisoner in segregation to proceed on RLUIPA claim that defendants did not make "individualized determinations . . . as to whether a prisoner in segregation can participate in communal worship").

Defendants cite various cases for the proposition that prisoners in segregation are not entitled to participate in group worship "so long as the inmates' rights of conscience are not infringed and they can request individual religious counseling."  Dfts.' Br., dkt. #13, at 12 (quoting Walker v. Mintzes, 771 F.2d 920, 930 (6th Cir. 1985), and citing other cases). However, nearly all of the cases defendants cite involved claims under the free exercise clause, which employs a more deferential standard in the prison context. O'Lone v. Shabazz, 482 U.S. 342, 348–50 (1987) (restriction on free exercise of prisoners does not violate First Amendment if restriction is reasonably related to legitimate penological interest).  Therefore, those cases do not provide helpful guidance.

Defendants cite two cases involving RLUIPA claims, but those cases are not instructive either.  In Rodgers v. Shearidin, No. CIV.A. CCB-09-1962, 2011 WL 4459092, at *8 (D. Md. Sept. 22, 2011), the court dismissed the prisoner's claim for injunctive relief

as moot because the prisoner had been released from segregation.  Incumaa v. Stirling, No. 9:12-CV-3493-DCN, 2014 WL 958679, *1 (D.S.C. Mar. 11, 2014), involved a request to congregate by the Five Percenters, "a gang that promotes a racist ideology." Defendants do not cite any cases in which a court upheld a ban prohibiting all prisoners in segregation from participating in group worship.

For the sake of completeness, I note Salgado v. Grams, No. 06-C-598-C, 2006 WL 3449648, at *1-2 (W.D. Wis. Nov. 27, 2006), a case that defendants do not cite.  In Salgado, I granted summary judgment to prison officials on a claim in which a prisoner in segregation was challenging a decision to deny his request to attend group worship. However, that case is not helpful to defendants because the officials in Salgado made a showing that threats on the prisoner's life made it unsafe for *him* in particular to attend.

In Gonzales, 546 U.S. at 436, the Court acknowledged that "there may be instances in which a need for uniformity precludes the recognition of exceptions to generally applicable" rules.  However, in this case, defendants' own actions show that a more individualized approach is appropriate.  For example, defendants admit that they allow some prisoners in segregation to attend group activities in the form of treatment programs, Dfts.' PFOF ¶ 35, dkt. #32, and that others are permitted to engage in group recreation, id. at ¶ 44.  Under RLUIPA, prison officials may not make exceptions to general rules for some purposes without at least considering whether an exception may be appropriate for a religious purpose as well.  Greene, 513 F.3d at 989-90 ("Prison officials must show that they actually considered and rejected the efficacy of less restrictive measures before adopting the

challenged practice.") (internal quotations omitted).

Defendants do not argue that they have considered whether group worship could be accommodated in a similar way to these other group activities and they do not argue that they have given any individualized consideration to plaintiff's requests to participate in group worship.  Rather, in denying plaintiff's grievances on this issue, officials relied entirely on the blanket prohibition in DAI Policy #309.61.01.  Dkt. #17.  Although defendants discuss plaintiff's disciplinary history in their proposed findings of fact, e.g., Dfts.' PFOF ¶ 91, dkt. #32, they do not suggest that anyone considered that history when denying plaintiff's requests and they do not explain how that history would affect a request plaintiff submitted now.

It would be premature for this court to conduct its own assessment of the reasonableness of allowing plaintiff to participate in group worship without giving prison officials the opportunity to consider in the first instance whether that request could be accommodated and, if so, how.  In addition to the possible accommodations discussed by the parties in this case (allowing certain prisoners in segregation to attend services in general population or creating a separate service for prisoners in segregation), officials could consider more limited accommodations, such as allowing prisoners to participate in services through closed-circuit televisions.  E.g., Crawford v. Clarke, 578 F.3d 39, 42 (1st Cir. 2009).

In light of RLUIPA's language and the supporting case law, my tentative conclusion is that defendants are violating RLUIPA by imposing a blanket prohibition on prisoners in segregation from participating in group worship. Further, because defendants have not yet

13

considered plaintiff's individual circumstances, any injunction in this case would be limited to requiring defendants to consider those circumstances with respect to any future requests. Again, it would be premature to decide whether plaintiff is entitled to additional relief. 18 U.S.C. § 3626(a)(1)(A) ("Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."); Socha v. Pollard, 621 F.3d 667, 670 (7th Cir. 2010) (federal courts may not issue advisory opinions).

Because plaintiff did not file his own motion for summary judgment, I will give the parties an opportunity to object if they believe that a different conclusion is required. Pactiv Corp. v. Rupert, 724 F.3d 999, 1001-02 (7th Cir. 2013) ("[A] district judge must notify the litigants, and invite the submission of evidence and legal arguments, before resolving a case on a ground the parties have bypassed or using a procedure they did not propose."). If the parties do not object, I will enter judgment in favor of plaintiff on this claim and enjoin defendants from rejecting any future requests for participation in group worship without considering his individual circumstances.

## B. Ban on Prisoner-Led Religious Services

With respect to plaintiff's challenge to the requirement that religious services at the prison must be led by a nonprisoner volunteer, my tentative conclusion is that the claim is not ripe. "Ripeness is predicated on the central perception that courts should not render decisions absent a genuine need to resolve a real dispute." Wisconsin Central, Ltd. v.

14

<u>Shannon</u>, 539 F.3d 751, 759 (7th Cir. 2008)(internal quotations and alterations omitted).

As discussed above, the first problem is that I cannot yet determine whether plaintiff is entitled to participate in group services while he is housed in segregation. If it turns out that plaintiff's individual circumstances support a conclusion that officials cannot accommodate plaintiff's request to participate, then the ban on prisoner-led services would have no effect on him, at least while he is in segregation.  In other words, if plaintiff cannot participate in group services *at all*, then he has no legal interest in the rules governing how and whether those services are conducted.

The second problem is that the parties have not cited any evidence indicating how long plaintiff is likely to remain in segregation.  In his declaration, plaintiff says only that he has been housed in segregation continuously since February 2007 and that he recently received another conduct report, which has "again extended the time to keep [him] in segregation," though he does not say for how long.  Plt.'s Dec., dkt. #27, at ¶¶ 8, 10.

If plaintiff is not scheduled to be released from segregation for many months, then any claim related to services held in general population is likely to be premature.  In that situation, any number of things could occur that would affect plaintiff's claim.  He could be transferred to a different prison, prison officials could find a volunteer to lead Muslim services on a regular basis, the prison could change its policies or plaintiff could change his religious affiliation.  All of these possibilities make this claim much more speculative than plaintiff's challenge to the segregation rule.

Under these circumstances, it would seem that plaintiff's claim challenging the ban

on prisoner-led religious services is not ripe for review.   <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."); <u>Rock Energy Co-op. v. Village of Rockton</u>, 614 F.3d 745, 748 (7th Cir. 2010) (ripeness doctrine "bar[s] a plaintiff from asserting an injury that depend[s] on so many future events that a judicial opinion would be advice about remote contingencies").  However, because the parties have not addressed this issue, I will give them an opportunity to file supplemental materials before I dismiss this claim without prejudice to plaintiff's refiling it after the claim becomes ripe.


ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants Kelli West, Rick Raemisch, Todd Overbo, Peter Huibregtse, Tim Haines, Gary Boughton, Charles Cole, Amy Smith, Gary Hamblin, Steve Casperson and Cathy Jess, dkt. #12, is GRANTED with respect to the claims of Mustafa-El K.A. Ajala (formerly known as Dennis Jones-El) under the free exercise clause, the establishment clause and the equal protection clause on the ground that plaintiff has abandoned those claims.  Defendants' motion is GRANTED as to defendants West, Overbo, Haines, Hamblin and  Cole and those defendants are DISMISSED for their lack of personal involvement.

2.   Plaintiff may have until January 16, 2015, to show cause why Raemisch, Huibregtse, Casperson and Smith should not be dismissed from the case for their lack of

personal involvement.

    3.    With respect to plaintiff's claims under the Religious Land Use and Institutionalized Persons Act, the parties may have until January 16, 2015, to show cause why (1) judgment should not be entered in favor of plaintiff on his claim that defendants' blanket prohibition on prisoners in segregation from participating in group worship violates RLUIPA; (2) relief on this claim should not be limited to a declaration and injunction that defendants must consider the individual circumstances of prisoners in segregation such as plaintiff who request to participate in group worship; and (3) plaintiff's challenge to the ban on prisoner-led religious services should not be dismissed as unripe.  If the parties do not respond by January 16, 2015, I will direct the clerk of court to enter judgment accordingly.

    Entered this 22d day of December, 2014.

               BY THE COURT:
               /s/
               BARBARA B. CRABB
               District Judge