IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MUSTAFA-EL K.A. AJALA,
formerly known as Dennis E. Jones-El,

OPINION and ORDER

Plaintiff,

13-cv-545-bbc

v.

GARY BOUGHTON and CATHY JESS,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se prisoner Mustafa-El K.A. Ajala is proceeding on claims that defendants Gary Boughton and Cathy Jess are violating his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, by prohibiting prisoners in segregation at the Wisconsin Secure Program Facility from participating in group worship and prohibiting any prisoners at the facility from leading a religious service. In an order dated December 22, 2014, dkt. #33, I reached three tentative conclusions after reviewing the parties' materials supporting and opposing defendants' motion for summary judgment: (1) plaintiff is entitled to judgment on his claim that defendants are violating RLUIPA by imposing a blanket ban on all prisoners in segregation from participating in group worship; (2) plaintiff's relief in this case should be limited to a declaration and injunction that defendants must consider the individual circumstances of prisoners in segregation such as plaintiff who request to participate in group worship; and (3) plaintiff's challenge to the ban

1

on prisoner-led religious services should be dismissed as unripe. However, because plaintiff did not file his own motion for summary judgment and the parties did not address the issue of ripeness, I gave the parties an opportunity to file supplemental materials before reaching a final decision.

After both sides raised significant issues in their supplemental materials, I decided to treat the new filings as cross motions for summary judgment and I allowed each side to respond. Having reviewed the parties' supplemental filings and the responses, I am adhering to my view that plaintiff's challenge to the ban on prisoner-led religious services should be dismissed as unripe, but I now conclude that defendants are entitled to summary judgment on plaintiff's challenge to the ban on participating in group worship, as the ban applies to him. This makes it unnecessary to decide whether the ban is valid as it applies to all prisoners in segregation.

OPINION

RLUIPA prohibits prisons receiving federal funds from imposing a "substantial burden" on a prisoner's "religious exercise" unless prison officials can demonstrate that the burden is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). The only question I need to address in this order with respect to plaintiff's claim regarding the ban on group worship for prisoners in segregation is whether defendants have shown that prohibiting plaintiff from participating in group worship is the least restrictive means to further a compelling government interest.

2

In their original summary judgment materials, defendants attempted to meet their burden by arguing generally that "segregation units house some very dangerous offenders." Dfts.' PFOF ¶ 23, dkt. #32.  See also Dfts.' Br., dkt. #13, at 9-10.  The problem with that argument was that it "lump[ed] all prisoners in segregation into one category without considering their individual circumstances."  Dkt. #33 at 8.  Most important, the argument did not address *plaintiff's* individual circumstances.  That was a problem because RLUIPA requires the defendants to "demonstrate[] that imposition of the burden *on that person* . . . is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1(a) (emphasis added).  See also Holt v. Hobbs, 135 S. Ct. 853, 863 (2015) ("RLUIPA, like RFRA, contemplates a more focused  inquiry and requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.") (internal quotations omitted).  Because defendants argued generally that "some" prisoners in segregation are "very dangerous," I could not determine whether the ban on group worship was the least restrictive means of furthering a compelling interest *as to plaintiff*.

In their supplemental materials, defendants have addressed this problem in two ways. First, they say that they considered plaintiff's individual circumstances when they placed him in administrative confinement and each time since then that they reviewed his status because part of this review involves a determination that plaintiff poses a threat to other prisoners. Dfts.' PFOF ¶¶ 144, 147, 149, 168, 172, dkt. #46.  (Administrative confinement is a type

3

of segregation for prisoners who have been identified as posing long-term risks to institution safety and security. Id. at ¶ 134.)

Second, defendants say that, even if some prisoners in segregation could safely congregate for religious worship, plaintiff is not one of those prisoners because of his history of gang activity. In particular, defendants say that plaintiff was a leader of the Vice Lords before he entered prison and he has continued to maintain his ties to the gang. Id. at ¶ 172. This history includes a conspiracy to carry out a shooting after plaintiff was incarcerated. Id. Most recently, plaintiff received a conduct report after officials found letters in his cell showing that plaintiff continued to maintain contact with gang members and is "actively participating" in the gang. Id. at ¶¶ 179-82; dkt. #39-7. Defendants also point to a conduct report that plaintiff received for attempting to disguise gang literature as a religious document. Dfts.' PFOF ¶ 251, dkt. #46. This, defendants say, is evidence that plaintiff is willing to use religious worship as a cover for gang activity and cannot be trusted to participate in religious congregate services at this time. Defendants fear that, if plaintiff were permitted to participate, he would use the opportunity to reassert his authority as a gang leader.

Plaintiff does not object to defendants' arguments about his individual circumstances on the ground that they should have been raised in their original motion for summary judgment, so I do not consider that issue. Instead, plaintiff raises a number of other objections, most of which relate to alleged inconsistencies in the way that officials at the Wisconsin Secure Program Facility have applied rules about group activities to prisoners in

4

segregation. In particular, he says that some prisoners in segregation are allowed now to participate in nonreligious group activity such as recreation and programming and that, in 2004 and 2005, prisoners in segregation at the Wisconsin Secure Program Facility were allowed to participate in group worship. Defendants deny that they have ever allowed prisoners in segregation to congregate for religious purposes and they say that the only prisoners in segregation now that are allowed to congregate with other prisoners are the few who are in the "green phase" of the High Risk Offender Program, which "is a progressive program, developed to facilitate the reintegration of inmates on administrative confinement status back to general population." Id. at ¶ 157. Prisoners in the green phase are allowed to participate in group activity because those prisoners have been "carefully screened and selected" and their behavior has been monitored to insure that "they can be safely managed in a group with other inmates." Id. at ¶ 167. Prisoners such as plaintiff who are not in the program may not participate in group activities. Id. at ¶ 214.

Even if I assume that in the past some prisoners in segregation were allowed to participate in group worship and that some prisoners in segregation now are allowed to participate in other kinds of group activity, that does not address the question whether the restrictions on group worship are valid *as to plaintiff now*. Defendants have pointed to individual concerns they have with respect to plaintiff's participating in group worship now, so the possibility that plaintiff was allowed to participate ten years ago or other prisoners are engaging in group activities now does not shed any light on whether prohibiting plaintiff from participating in group worship today is the least restrictive means of furthering a

5

compelling government interest.

The particular concerns defendants articulate relate to possible gang activity. As discussed above, defendants say that plaintiff was a high-ranking member of the Vice Lords before he was incarcerated and that, as recently as a few months ago, he was still involved in gang activity and wielding influence over gang members. Further, defendants say that plaintiff has been disciplined in the past for using religion as a disguise for gang activity, so this heightens defendants' concern that plaintiff will use group worship for the same purpose.

Plaintiff does not deny that defendants have a compelling interest in suppressing gang activity. Singer v. Raemisch, 593 F.3d 529, 535 (7th Cir. 2010) ("It is beyond dispute that gangs are incompatible with any penological system and that they serve to undermine prison security.") (alterations and internal quotations omitted); Rios v. Lane, 812 F.2d 1032, 1037 (7th Cir. 1987) ("[I]t is difficult to conceive of a single factor more detrimental to penological objectives than organized gang activity."). Plaintiff's primary response to defendants' evidence regarding his past gang activity is to deny that he is or ever was involved in a gang, but it is undisputed that hearing officers found him guilty of the conduct reports at issue and defendants are entitled to rely on those findings. Further, plaintiff did not challenge the validity of any of his past discipline in his complaint, so those issues are outside the scope of this lawsuit. Thus, for the purpose of this case, I must assume that defendants still have valid concerns that plaintiff would abuse an opportunity to participate in group worship for an illegitimate purpose. Holt, 135 S. Ct. at 866-67 (prison officials may restrict religious conduct "if an institution suspects that an inmate is using religious

activity to cloak illicit conduct" or "if the [prisoner] abuses the exemption in a manner that undermines the prison's compelling interests") (internal quotations omitted).

Plaintiff challenges defendants' concerns about his disciplinary history on a number of other grounds, but none of these are persuasive. First, he challenges the sincerity of defendants' concern by stating in an affidavit that he "did not receive any segregation time" as a result of the recent conduct report. Dkt. #53 at ¶ 3. However, the fact that a hearing officer (whom plaintiff does not identify) chose to discipline plaintiff in some way other than to increase his time in segregation sheds little light on the question whether defendants have legitimate concerns about allowing plaintiff to participate in group worship. If I accept the conduct report as valid (which, as discussed above, I must do in the context of this case), then I must accept as well defendants' contention that they have substantial grounds for believing that plaintiff is still involved in gang activity and that he could use group worship as a way of furthering that activity. Further, defendant Boughton has shown that he *does* consider plaintiff's conduct to be very serious because, after plaintiff received the recent conduct report, it prompted Boughton to keep plaintiff in administrative confinement rather than release him to general population as had been planned before he received the report. Dfts.' PFOF ¶ 182, dkt. #46.

Second, plaintiff says that other prisoners who committed crimes such as murder are allowed in general population (plaintiff says he is serving a sentence for armed robbery) and that other prisoners sent to the Wisconsin Secure Program Facility for the same reasons that he was are also in general population. Neither of these observations is compelling. Of

7

course, many factors go into a security classification besides a prisoner's original crime and an individual conduct report. The fact that other prisoners committed similar or more serious conduct than plaintiff many years ago does not change the fact that defendants' current assessment of plaintiff's conduct is that it is not safe for him to participate in group worship. Even under RLUIPA, courts must "respect" the proposition that "[p]rison officials are experts in running prisons and evaluating the likely effects of altering prison rules." Holt, 135 S. Ct. at 863-64. Thus, I must give deference to defendants' assessment that plaintiff remains dangerous.

Third, plaintiff says that he is "scheduled to attend a group treatment program, anger management," dkt. #66 at ¶ 5, which he says is evidence that defendants do not see him as a threat to other prisoners. However, the only evidence plaintiff cites in support of this statement is a response to an "interview/information request" in which someone by the name of "Mink" writes that "the next [anger management] class is full. you will be placed on a list." Dkt. #66-1. (Plaintiff says that Mink is his social worker.) Even assuming this statement is true, it is not evidence that anger management is a group treatment program, that plaintiff will be permitted by security officials to attend the program or that, if he were allowed to attend, an anger management program presents the same risk to security that group worship would. In particular, plaintiff has not rebutted defendants' evidence that group worship presents a heightened risk for gang activity because of the substantial overlap of gang affiliation and religious affiliation in Wisconsin prisons, making group worship potentially more dangerous than some treatment programs. Dfts.' PFOF ¶¶ 207, 217, 226-

28, dkt. #46.

Accordingly, I conclude that defendants have shown that they have a compelling interest in not allowing plaintiff to attend group worship at this time. Further, neither side has identified any less restrictive alternatives that defendants could try. In the December 22, 2014 order, I raised the question whether defendants could allow prisoners in segregation to participate in religious services through closed-circuit televisions. Crawford v. Clarke, 578 F.3d 39, 42 (1st Cir. 2009) (adopting that approach). However, in their supplemental materials, both sides rejected that possibility as a feasible alternative, Plt.'s Br., dkt. #52 at 5; Dfts.' Br., dkt. #45, at 15-16, so I have not considered that issue further. As a result, defendants are entitled to summary judgment on this claim.

A week after the deadline for submitting supplemental materials, plaintiff filed a motion in which he asked the court to a consider a new affidavit from another prisoner in segregation at the Wisconsin Secure Program Facility, Gesa Kalati, formerly known as Stanley Felton. Dkt. #67. I am denying this motion because plaintiff does not identify good cause for failing to submit the evidence within the deadline, but even if I did consider the affidavit, it would not change the outcome of the case. Kalati says in his affidavit that he is a prisoner in segregation at the Wisconsin Secure Program Facility and that he is allowed to participate in various group activities, including "religious groups," a term he does not define. Dkt. #69. Plaintiff says that the affidavit is evidence that defendants' stated concerns about his dangerousness are pretextual, but it is undisputed that prisoners in the high risk offender program are permitted to participate in group activities and Kalati does

9

not say whether he is in that program. In their response to plaintiff's motion, defendants submitted documentation showing that Kalati is in the high risk offender program, dkt. #71-1, which means that he is not similarly situated to plaintiff and that any privileges Kalati may have are not indicative of the privileges that plaintiff should have.

Because I have concluded that plaintiff is not entitled to participate in group worship at this time, I adhere to my conclusion that plaintiff's claim regarding the ban on prisoners leading group worship is not ripe for review. If plaintiff cannot attend group services, then he could not benefit from a lifting of the ban on inmate-led group services. Sierra Club v. Franklin County Power of Illinois, LLC, 546 F.3d 918, 927-28 (7th Cir. 2008) ("[A] plaintiff must show that a favorable decision will likely, not just speculatively, relieve her injury."). Particularly because the parties do not identify when plaintiff is expected to be released from administrative confinement, it would be premature to decide this claim. Texas v. United States, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."); Rock Energy Co-op. v. Village of Rockton, 614 F.3d 745, 748 (7th Cir. 2010) (ripeness doctrine "bar[s] a plaintiff from asserting an injury that depend[s] on so many future events that a judicial opinion would be advice about remote contingencies"). When plaintiff is released from administrative confinement and obtains permission to participate in group religious services, he is free to raise a new challenge on this issue.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Gary Boughton and Cathy Jess, dkt. #45, is GRANTED, and the motion for summary judgment filed by plaintiff Mustafa-El K.A. Ajala, dkt. #52, is DENIED.

2. Plaintiff's "motion for the court's consideration of newly discovered evidence," dkt. #67, is DENIED.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 22d day of April, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge